UNITED STATES *v.* J. P. REISS Co. (No. 3314 ) [1]

United States Court of Customs and Patent Appeals, November 3, 1930

*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Comstock & Washburn* (*Henry J. Rode* and *George J. Puckhafer* of counsel) for appellee.

[Oral argument October 9, 1930, by Mr. Folks and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in the instant case was described on the invoice as crystal ballotini. The appraiser, in his answer to the protest, described it as consisting of "Frostings in globular form in small pieces not ground or pulverized."

It was classified and assessed for duty by the collector under paragraph 231 of the Tariff Act of 1922, at 40 per centum ad valorem as "frostings in any other form," meaning thereby, we assume, that it was in a form other than "ground or pulverized."

---

[1] T. D. 44373.

Paragraph 231 reads as follows:

Smalts, frostings, and all ceramic and glass colors, fluxes, glazes, and enamels, all the foregoing, ground or pulverized, 30 per centum ad valorem; in any other form, 40 per centum ad valorem; opal, enamel or cylinder glass tiles, tiling, and rods, 40 per centum ad valorem.

The importer made protest alleging the merchandise to be "properly dutiable at only 30 per centum under paragraph 231" and alternatively claiming that it "is dutiable at 10 per centum or 20 per centum under paragraph 1459," the general or "basket" paragraph of the law.

From the judgment the Government has appealed to this court, and here insists that the classification by the collector was the correct one, or, in the alternative, that it should be classified under paragraph 230 as a "manufacture of glass not specially provided for."

We are, therefore, confronted with the necessity of determining two primary questions:

First, is the involved merchandise, frostings, properly classifiable under paragraph 231?

Second, if so, is it "frostings ground or pulverized" and therefore dutiable at 30 per centum, or is it frostings in some other form and therefore dutiable at 40 per centum?

There is testimony in the record to the effect that the merchandise at bar is the same as that which, in the case of B. F. Drakenfield & Co., 17 Treas. Dec. 160, T. D. 29564, G. A. 6869, was given a classification stated to be the classification here sought.

The Drakenfield case arose under the Tariff Act of 1897 and was decided by the Board of General Appraisers (now the United States Customs Court) February 23, 1909. The board held the merchandise there involved to be dutiable under paragraph 58, Tariff Act of 1897, the pertinent portion of which reads as follows:

PAR. 58. All paints, colors, pigments, lakes, crayons, smalts and frostings, whether crude or dry or mixed, or ground with water or oil or with solutions other than oil, not otherwise specially provided for in this Act, thirty per centum ad valorem * * *.

Learned counsel for appellee has argued before us, both orally and in his brief, that—

There is doubt as to whether the words "ground or pulverized" and "in any other form" relate at all to "frostings." Strictly speaking, frostings are not "ground or pulverized." Frostings are made of ground or pulverized glass which is ground or pulverized to make frostings. [Italics quoted.]

It appears to be counsel's idea that the present controversy has arisen "because of the rearrangement of the paint and glass schedules in the Tariff Act of 1922" and that the phrase "ground or pulverized" has reference to the ceramic and glass colors, fluxes, glazes, and enamels mentioned in the paragraph and not to smalts and frostings. He has favored the court in his brief with a recitation of the tariff

history relating to frostings and points out that in the act of 1922 "frostings" was transferred to a new schedule, but that it is still associated with paints, colors, and smalts and that its transfer "does not necessarily mean a legislative intent on the part of Congress to alter the tariff status of the articles mentioned in the paragraph." Wherefore, as we understand it, the *Drakenfield* case is advanced as a precedent in point in the instant controversy, although appellee does not press it with great vigor, merely referring to it incidentally, without in fact naming the case. The court below, however, cites it, we assume, as an authority.

The theory of appellee above set forth is not lacking in plausibility, but we do not feel that it can be adopted as correct.

That it is the duty of the courts to give effect and force to all legislative language where possible is such an elemental and well understood legal principle as to require no citation of authorities in its support. While, as stated, frostings are made from glass material and, strictly speaking, it is the glass which is treated and not frostings itself, still the paragraph should, we think, be given a meaning as if it read "ground or pulverized frostings" and "frostings in a form not ground or pulverized." This, we think, was clearly the intent of Congress and we feel that it would be supertechnical to construe the language otherwise.

By reference to paragraph 231 it will be observed that, after stating the several articles first therein provided for, the phrases "*all the foregoing*, ground or pulverized, 30 per centum ad valorem; in any other form, 40 per centum ad valorem" are used. (Italics ours.) There can be no dispute, we think, that each of the articles (smalts, frostings, ceramic and glass colors, fluxes, glazes and enamels) is capable of being ground or pulverized, and also each may be in some other form.

From the language above quoted, it appears to be manifest that Congress, in the act of 1922, recognized and provided for two general classes of frostings, to wit, frostings made from glass by grinding or pulverizing the glass, and frostings which, in the finished state, are in a form other than the form produced simply by grinding or pulverizing, and different rates of duty are provided for the two classes.

It may be further stated that an examination of the board's opinion in the *Drakenfield* case discloses that the decision rested upon proof of commercial designation, and it is the settled law that there is no presumption of commercial designation continuing from one tariff act to another. *United States* v. *Jules Raunheim*, 17 C. C. P. A. (Customs) 425, 431, T. D. 43867, and cases therein cited.

We, therefore, could not treat the decision in the *Drakenfield* case as necessarily controlling in the case at bar, even were the language

of the present law identical with that of the act of 1897, which it is not. In applying it the court below evidently overlooked the fact that it rested upon commercial designation and did not take the change of language in the 1922 act into account.

The case, however, to which we presume the customs court gave greatest weight was its prior case of *Froman & Levy*, 53 Treas. Dec. 834. This arose under the present law and was decided January 17, 1928, in an opinion of which an abstract (4845) only is published. This abstract reads as follows:

**No. 4845.**—Protests 169600–G, etc., of Froman & Levy et al. (New York).

FROSTINGS—PULVERIZED—POWDER.—Frostings classified at 40 per centum ad valorem are claimed dutiable at only 30 per centum under the provisions of paragraph 231, Tariff Act of 1922. It is contended that this merchandise is in pulverized form and that "pulverized form means powder form."

Opinion by SULLIVAN, J. It was found that the frostings in question resemble fine granulated sugar or sand rather than powder as defined in the Standard Dictionary. From the dictionary definition it appears that frostings are made from glass coarsely powdered, and it was found that the frostings in this case are ground. They were therefore held dutiable at 30 per centum under paragraph 231 as claimed.

The record in the *Froman & Levy* case was made a part of the record in the instant case. Samples of the merchandise were filed in that case and the testimony of one witness was taken on behalf of the importer. This comprised all the evidence in the *Froman & Levy* case. It is evident that the merchandise there involved was identical with that of the instant case. Indeed, as we understand the record, the Exhibits 1, 2, and 3 of the instant case are the identical exhibits which were filed in the *Froman & Levy* case.

In the *Froman & Levy* case, however, there was no evidence as to the method of manufacture or use of the article, and we are at a loss to understand how the Customs Court was able to find from any testimony there given that the "frostings in this case are ground." There is no testimony whatever in that record, in so far as same is incorporated in the present case, to so indicate or to indicate any method of production.

Nevertheless such was the finding of the court and the protest was sustained in that case, apparently upon that theory.

There was no appeal by the Government and the Customs Court followed it as controlling in the instant case.

In so doing we can but feel that the court below must have failed to give any weight whatever to the evidence in the instant case presented on behalf of the Government, although much of it is quoted in the opinion sustaining the protest. This evidence we think must be considered.

In addition to Exhibits 1, 2, and 3 taken, as we understand it, from the *Froman & Levy* case and which represent the merchandise in issue, there was also introduced in the instant case illustrative Exhibit A. This latter consists of diminutive bits of flat, flaky glass evidently reduced to their present form by some process of grinding or pulverizing. These are almost pure white in appearance and when scattered upon a colored background give the effect of fallen snow or of frost.

The testimony establishes the fact that the material is much used by being sprinkled over merchandise in shop windows, etc., during the holiday season to give the merchandise the appearance of being covered with frost.

The record further establishes the fact that this type of article is produced by putting molten glass on a blowpipe and blowing it into a large bubble, the blowing being continued until the bubble bursts into flakes. These flakes appear to be then ground or pulverized into the sizes desired, the different sizes being separated by screening.

Illustrative Exhibits 1, 2, and 3, representative of the involved merchandise, are very small globular-shaped bits of glass, those comprising Exhibit 1 (which appears to be the only one reaching us) being much smaller than a mustard seed. The record establishes the fact that these are produced by passing crushed glass through a tower, quite similar to a shot tower, the tower being heated to 1,400 degrees of temperature, by means of which process it becomes globular in form. This type is used in various ways, such as "on moving-picture screens to reflect light, on lamp shades, textiles that ladies wear, shoe buckles, parchment shades, dress ornaments of various kinds," etc., being applied to at least some of the materials upon which used by means of glue which causes it to adhere. Different sizes of these globular articles are represented by the different exhibits, and we understand there are a number of other sizes not represented by exhibits but all produced by the tower process.

It thus appears that the uses of the respective types are quite different in character.

The court below states:

Exhibit 1 was invoiced as "ballotini crystal" No. 7. We described it in our previous decision as resembling fine granulated sugar, but not quite as white, having a slight brownish tinge. It differs somewhat from granulated sugar by reason of the particles being globular instead of irregular. Exhibits 2 and 3 were the same as Exhibit 1, but finer. On the other hand, illustrative Exhibit A is pure white and has a flaky appearance, resembling more nearly fine chips of glass than globules.

We do not understand that there is any dispute as to the respective methods of producing these two classes of articles nor as to the uses

to which they are applied. However this may be, the record, we think, indisputably establishes the facts recited.

That the merchandise represented by illustrative Exhibit A is known as frostings all agree. As to that represented by Exhibits 1, 2, and 3 there is a disagreement among the witnesses. Three witnesses called by the Government are quite positive in the statement that it is not known to the trade as frostings. These witnesses, we may say, appear to have been qualified by experience as dealers, and two of them by some experience as manufacturers, to give correct information concerning it.

Messrs. Paul E. and Rudolf H. Potters, two of the Government witnesses, manufactured the globular articles for about a year in 1914–1915, and have had many years experience in buying and selling merchandise of both types. They are engaged in the glass-manufacturing business and have been selling the merchandise since 1914 in wholesale quantities. Joseph Ruzicka, the other Government witness, is an importer and jobber of glassware and has dealt in both types of merchandise for eight or nine years.

On the other hand, Mr. William P. Hoffman, who has been connected with the firm of B. F. Drakenfield & Co. (Inc.) for a period of some 45 years, also qualifies as one having experience by extensive dealing in this merchandise and establishes a competency to give correct information concerning it. It was he who testified in the *Drakenfield* case, *supra*. In the instant case he states that the merchandise is exactly similar to that in the former case. It was then referred to as "streuperlen" which, the witness states, is the German word for frostings. "Ballotini" or "bollotini" (it appears in the record spelled both ways) is defined as being "a small glass globule." Government witness, Mr. Paul E. Potters, states: "As I understand it (bollotini) is an Italian word meaning shiny ball."

The witness Hoffman, called by the importer, is quite positive in the assertion that the Italian bollotini is identical with the German streuperlen and that both are designated as frostings.

As was stated at the outset of the opinion, the appraiser returned the merchandise for duty as frostings and it was assessed as such by the collector. In the argument before us the Government has not pressed its alternative contention as to its being classifiable as a manufacture of glass.

Upon a careful consideration of the exhibits and testimony—in short the whole record in the case—we feel that the merchandise may and should be pronounced frostings, and we so hold.

It seems quite clear to us, however, in view of the globular shape of the items and the process of manufacture, that they are not ground or pulverized frostings but of another form.

The record establishes the fact that finely-ground glass is used in their making, being projected through the heated tower as herein above described. In that respect it may be said truly that they were at one period ground or pulverized, but *when imported* the merchandise had been advanced beyond the ground or pulverized stage and it is elemental in customs law that goods should be classified according to the condition as imported. *United States* v. *International Forwarding Co.*, 15 Ct. Cust. Appls. 198, T. D. 42235.

It may be that the very ground or pulverized flakes represented by illustrative Exhibit A, agreed on all sides to be frostings, are utilized in making the globular articles, but, if so, the process by which the latter are produced is an additional one to the grinding or pulverizing, and the result of the process is frostings in another form.

The classification of the collector giving to the frostings in the globular form a higher rate of duty than that given to those merely ground or pulverized is entirely consistent with the well-known general policy of Congress of graduating duty rates according to the progressive steps in the manufacturing of articles.

It is our opinion that the classification of the collector is correct and should be sustained. Accordingly, the judgment of the court below must be and the same is *reversed*.